844 P.2d 828

**THRIFTWAY MARKETING CORPORATION, Petitioner–Appellee,**

v.

**The STATE of New Mexico, Governor Garrey R. Carruthers, Department of Alcoholic Beverage Control, and its Director, Ray Shollenbarger, Respondents–Appellants,**

and

**Nageezi Chapter of the Navajo Tribe, Intervenor–Appellant.**

No. 12351.

Court of Appeals of New Mexico.

Aug. 18, 1992.

Steven T. Bunch, Asst. Atty. Gen., Navajo Nation, Window Rock, AZ and Earl Mettler, Mettler & LeCuyer, P.C., Albuquerque, for intervenor-appellant.

Tom Udall, Atty. Gen. and Wanda J. Wilkinson, Asst. Atty. Gen., Santa Fe, for respondents-appellants.

Robert D. Benson, Farmington, for petitioner-appellee.

## OPINION

CHAVEZ, Judge.

This appeal requires statutory interpretation of NMSA 1978, Section 60–6B–4(G) (Repl.Pamp.1992) of the Liquor Control Act. Petitioner, Thriftway Marketing Corporation (Thriftway), sought a writ of mandamus from the district court compelling approval of a liquor license transfer by the director of the Department of Alcoholic

Beverage Control (Director). Thriftway argues the Director should not have discretion to disapprove the transfer based on the language of Subsection (G). The district court issued an order enforcing writ of mandamus granting the relief sought. Respondent, the State of New Mexico, appealed and the Nageezi Chapter of the Navajo Tribe was allowed amicus curiae status by this court. The Nageezi Chapter then moved to change its status from amicus curiae to intervenor and we granted the motion. *Thriftway Mktg. Corp. v. State of N.M.*, 111 N.M. 763, 810 P.2d 349 (Ct.App. 1990). The State moved to dismiss the appeal but, based on our decision to allow intervention, the motion was denied. *Id.* The Nageezi Chapter contends that the Director has discretionary authority in approving liquor license transfers. We agree and reverse.

### Facts

Thriftway sought the transfer of a liquor license to a convenience store located within the boundaries of the Nageezi Chapter. The Director, pursuant to statutory requirements set forth in NMSA 1978, Section 60–6B–2(D) and (H) (Repl.Pamp.1992), conducted a hearing on the proposed transfer and recommended approval.

The Director gave notice of the preliminary approval to the San Juan County Board of Commissioners (Board). The Board held a public hearing of its own, pursuant to Section 60–6B–4(C), but failed to either approve or disapprove the proposed license transfer within the required thirty days. § 60–6B–4(G).

Thriftway requested that the Director grant final approval of the license transfer. The Director refused and Thriftway filed its petition for writ of mandamus with the district court. It is the enforcement of this writ from which the State and the Nageezi Chapter appeal.

We note that Thriftway was not seeking mandamus to require the Director simply to make a decision. It was demanding a decision to approve the transfer. We do not address whether mandamus would be appropriate to require the Director to render a decision when the Director has failed to decide one way or the other.

### Discussion

The issue before us concerns the meaning of language contained in Section 60–6B–4(G) of the Liquor Control Act. Section 60–6B–4(G) states:

Within thirty days after the public hearing, the governing body shall notify the department as to whether the governing body has approved or disapproved the proposed issuance or transfer of the license. If the governing body fails to either approve or disapprove the issuance or transfer of the license within thirty days after the public hearing, the director *may* give final approval to the issuance or transfer of the license. [Emphasis added].

Thriftway contends that the Director's approval of the license transfer is mandatory and that the word "may" should be construed as "shall" to avoid frustration and absurdity. We disagree.

We look first to our rules of statutory construction set forth in NMSA 1978, Section 12–2–2 (Repl.Pamp.1988). This section declares that the listed rules "shall be observed" unless inconsistent with manifest legislative intent or repugnant to statutory context. Subsection (I) states, "the words 'shall' and 'will' are mandatory and 'may' is permissive or directory." Thus, the legislature has defined the two words.

In addition, a fundamental rule of statutory construction states that in interpreting statutes, the words "shall" and "may" should not be used interchangeably but should be given their ordinary meaning. *In re Sedillo,* 66 N.M. 267, 272, 347 P.2d 162, 165 (1959); *accord Winston v. New Mexico State Police Bd.,* 80 N.M. 310, 454 P.2d 967 (1969); *Montano v. Williams,* 89 N.M. 86, 547 P.2d 569 (Ct.App.1976). Where the terms "shall" and "may" have been juxtaposed in the same statute, ordinarily it must be concluded that the legislature was aware of and intended different meanings. *Rice v. Superior Court,* 136 Cal.App.3d 81, 185 Cal.Rptr. 853 (Cal.Ct.

App.1982); *see* Norman J. Singer, *Sutherland Statutory Construction* § 57.11 (5th ed. Temp.Pamp.1992); *see also Johnston v. Board of Educ.*, 65 N.M. 147, 151, 333 P.2d 1051, 1053 (1958) (difference of language in two sections of constitution placed in juxtaposition is suggestive of an intention of drafters that language has different meanings); *Carper v. Board of County Comm'rs*, 57 N.M. 137, 144, 255 P.2d 673, 677 (1953).

■ We think it is clear that the word "may" as used in Section 60–6B–4(G) was intended by the legislature to invest the director with discretion as to whether to give final approval to the issuance or transfer of a license when a governing body of a county has failed to either approve or disapprove the issuance or transfer of the license within thirty days after a public hearing. Section 60–6B–4 contains three sequential subsections that exemplify this construction. As previously discussed, Subsection (G) provides that when the governing body fails to either approve or disapprove a license transfer, the director *may* approve the transfer. Juxtaposed with this discretionary language is mandatory language contained in Subsection (H): "If the governing body disapproves of the issuance or transfer of the license, the director *shall* disapprove the issuance or transfer of the license." (Emphasis added.) Then, Subsection (I) states: "If the governing body approves of the issuance or transfer of the license, the director *shall* approve the issuance or transfer of the license." (Emphasis added.) The foregoing illustrates legislative intent to impart different meanings to the words "shall" and "may."

Despite the rules of statutory construction, Thriftway notes that on occasion "may" has been interpreted to mean "shall" in New Mexico statutes, *e.g., State ex rel. Robinson v. King*, 86 N.M. 231, 522 P.2d 83 (1974). Thriftway contends that the statutory scheme for issuing liquor licenses requires such a construction in this case. In particular, Thriftway points out that the Director had given preliminary approval to transfer of the license prior to the hearing before the San Juan County Board of Commissioners. In granting that approval the Director was required to "take into consideration all requirements of the Liquor Control Act." § 60–6B–2(H). Thriftway argues that to allow the Director to deny a license after having made a determination that the license is in compliance with all provisions of the Liquor Control Act, would promote arbitrary and capricious action by the Director. To construe "may" in Section 60–6B–4(G) so as to permit such "inconsistent" action by the Director would, in Thriftway's view, render the statute absurd, unreasonable, and unjust.

We disagree. We doubt that the legislature intended to place such controlling weight on the determination made by the Director after the preliminary hearing on the application for transfer. The public hearing upon which the Director makes a decision regarding preliminary approval or disapproval is conducted in Santa Fe within thirty days after receipt of the application for transfer. § 60–6B–2(D), (H). Although the Director is to consider all requirements of the Liquor Control Act and any evidence relevant to those requirements can be raised at the preliminary public hearing, it is unrealistic to believe that those in the community where the license will be located will always be able, at the preliminary hearing, to marshal evidence relating to the impact of the proposed license on the community. We find it significant that after the Director gives preliminary approval to a license transfer, a further hearing is to be held before the governing body of the local option district in which the proposed license premises are to be located, and the governing body may disapprove the issuance or transfer of the license if it "would be detrimental to the public health, safety or morals of the residents of the local option district." § 60–6B–4(F)(3).

When the governing body does not make a decision on approval or disapproval of the transfer of the license, the Director must make that decision. The Director unquestionably can consider matters presented at the hearing before the governing body in

making a decision on transfer pursuant to Section 60–6B–4(G). Perhaps the Director also has authority to conduct an additional hearing to personally hear evidence relating to the local option district, a matter we need not consider here. In any event, we do not think it is necessarily arbitrary or capricious for the Director to deny transfer of a license pursuant to Section 60–6B–4(G) after having granted preliminary approval. On the contrary, given the statutory scheme for approval of a license transfer, the legislature undoubtedly thought that a Director exercising sound discretion *may* decide to grant approval or *may* decide to deny approval after the governing body has failed to make a decision. In other words, both the statutory language and the statutory scheme support the interpretation of "may" as granting discretion to the Director under Section 60–6B–4(G).

■ To avoid any misunderstanding of our holding, we point out that we are not construing Section 60–6B–4(G) as providing unreviewable discretion to the Director. This appeal does not raise the question of the nature or extent of possible judicial review of a decision by the Director to grant or deny the transfer of a license.

■ Finally, the policies behind the liquor control statutes are to protect public health, safety and morals of communities throughout New Mexico. NMSA 1978, § 60–3A–2(A) (Repl.Pamp.1992); *see also* 3A Singer, *supra,* § 71.03, at 526 (4th ed. 1986) (for liquor control legislation, courts use liberal interpretation to give effect to legislative purpose and to facilitate temperance). The purpose of liquor control legislation is not to promote liquor distribution, but to regulate and restrain it. *State ex rel. Maloney v. Sierra,* 82 N.M. 125, 477 P.2d 301 (1970). "That policy and any loosening of it, is the business of the legislature, not ours." *Id.* at 135, 477 P.2d at 311. We therefore deny Thriftway's request that the word "may" be given a mandatory meaning when interpreting Section 60–6B–4(G).

*Conclusion*

Based on the above, we reverse the district court and remand this case with instructions that the district court quash its writ of mandamus compelling the Director's approval of the liquor license transfer.

IT IS SO ORDERED.

DONNELLY and HARTZ, JJ., concur.