**Certiorari Granted, July 17, 2015, No. 35,349**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-080**

**Filing Date:  May 11, 2015**

**Docket No. 33,568**

**IN THE MATTER OF THE
ESTATE OF EDWARD K.
McELVENY, Deceased,**

**MICHAEL PHILLIPS, as
Personal Representative of the
Estate of Edward K. McElveny,**

     **Petitioner-Appellee,**

**v.**

**STATE OF NEW MEXICO, ex rel.
DEPARTMENT OF TAXATION
AND REVENUE,**

     **Respondent-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge**

Law Office of Cristy J. Carbón-Gaul
Cristy J. Carbón-Gaul
Albuquerque, NM

Starace Law
Carmela D. Starace
Albuquerque, NM

for Appellee

Hector H. Balderas, Attorney General
Peter A. Breen, Special Assistant Attorney General
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Chief Judge.**

**{1}**     This case presents a question of first impression: whether the district court in a formal proceeding under the Uniform Probate Code (UPC), NMSA 1978, §§ 45-1-101 to -404 (1975, as amended through 2011) has jurisdiction to order the Department of Taxation and Revenue (Department) to deliver estate assets to a personal representative when the assets are in the Department's custody pursuant to the Uniform Unclaimed Property Act (UPA), NMSA 1978, §§ 7-8A-1 to -31 (1975, as amended through 2006). We conclude that the district court has jurisdiction to do so, and affirm the order of the district court.

**BACKGROUND**

**{2}**     Edward McElveny (Decedent) died intestate in 1991, and his heirs consist of seven adult grandchildren and one adult great-grandchild. In 2013, Michael Phillips, one of the adult grandsons, filed an application in the Santa Fe probate court to open an informal probate for his grandfather and to be appointed personal representative of Decedent's estate (Estate). The remaining heirs renounced their right to be appointed personal representative and nominated Michael Phillips to be appointed personal representative of the Estate. The application states that Decedent "has property which was transferred to the . . . Department as unclaimed property" and that "[a]s part of the probate administration, Applicant will claim the unclaimed property for Decedent's Estate." It is undisputed that the Department is holding property in the name of Decedent valued at "a little less than $70,000" pursuant to the UPA. The probate court issued an order appointing Mr. Phillips personal representative (PR) of the Estate and ordered the Department to "release the unclaimed property of the Decedent to Applicant as [PR] of the Estate of Decedent."

**{3}**     The PR attached a copy of the probate court order to a blank claim form used by the Department under the UPA and submitted it to the unclaimed property office of the Department, demanding that the money be released to the PR to be administered under the UPC and distributed to the heirs. The Department rejected the claim as "incomplete" on the grounds that "[w]e do not have appropriate documentation showing that the property in question would devolve to Mr. Phillips alone under the applicable law of heirship" and that "the application should be made directly to [the] Department as unclaimed property custodian rather than probate." The Estate responded by pointing out that the demand was not made on behalf of Mr. Phillips personally, but in his capacity as PR of the Estate so the money could be distributed to the heirs. In addition, the Estate disputed that the exclusive method for acquiring estate assets in the custody of the Department under the UPA is through the Department's own administrative process rather than the UPC. The Estate therefore contended that the application was "complete" and demanded that the funds be delivered to the PR no later than ninety days after the claim was initially submitted to the

2

Department, or the Estate would return to court and seek enforcement of the probate court order in addition to sanctions.

**{4}** The Department failed to respond to the Estate's demand, and the probate court thereupon transferred the probate case to the district court "for determination of all disputed issues" subject to being remanded back to the probate court for completion after resolution of the disputed issues. *See* N.M. Const. art. VI, § 23 (stating that the probate court "shall not have jurisdiction in civil causes in which the matter in controversy shall exceed in value three thousand dollars ($3,000.00) exclusive of interest and cost[.]"). The Estate then filed a motion in the district court to enforce the probate court order and for sanctions, with notice to the Department. The Department responded by moving to dismiss on the ground that the district court had no jurisdiction to grant the relief requested. First, the Department asserted that the UPA is the "exclusive mode" for disbursing unclaimed property and that a court order issued under the UPC is ineffective. Second, the Department asserted the district court lacked jurisdiction because the Estate failed to exhaust its administrative remedies under the UPA before it obtained the order from the probate court. Finally, the Department asserted that because it was not served with process, the probate court failed to obtain jurisdiction over the Department.

**{5}** Following a hearing at which the Department appeared, the district court denied the Department's motion to dismiss, enforced the order of the probate court, and ordered the Department to deliver the personal property of Decedent to the PR of the Estate. The Department appeals.

**DISCUSSION**

**{6}** As a prelude to our analysis, we provide a brief overview of the UPA and how it generally operates. Property is "presumed abandoned" if it is "unclaimed" by its apparent owner for a specified period of time. Section 7-8A-2. A "holder" of property that is "presumed abandoned" is required to send written notice to the apparent owner stating that the holder is in possession of property that is subject to the UPA, make a report to the Department that it is in possession of such property and, ultimately, deliver custody of the property to the Department. Sections 7-8A-4; 7-8A-7; 7-8A-8. Upon payment or delivery of property to the Department, "the state assumes custody and responsibility for the safekeeping of the property." Section 7-8A-10(b). The Department is then required to publish a notice stating in part that "property of the owner is presumed to be abandoned and has been taken into the protective custody of the [Department.]" Section 7-8A-9(a)(3). The notice must also state that "information about the property and its return to the owner is available to a person having a legal or beneficial interest in the property, upon request to the [Department]." Section 7-8A-9(a)(4). The property does not escheat to the State. The Department is required to deposit all money and proceeds from the sale of abandoned property, minus expenses, into the tax administration suspense fund and retain it in an unclaimed property fund containing at least one hundred thousand dollars ($100,000) from which the Department "shall pay claims duly allowed." Section 7-8A-13.

3

**{7}**     Against this general background, the Department contends that the order of the district court must be reversed, arguing: (1) the district court had no jurisdiction, apart from the UPA, to order the Department to release the unclaimed property to the Estate; (2) the district court order is void because the Department was not served with process; and (3) for additional reasons, which we address summarily.

**Standard of Review**

**{8}**     Arguments made by the Department require us to engage in statutory interpretation, which requires de novo review. *Oldham v. Oldham*, 2011-NMSC-007, ¶ 10, 149 N.M. 215, 247 P.3d 736.  In addition, whether a district court has subject matter jurisdiction likewise presents a question of law, with de novo review. *State v. Chavarria*, 2009-NMSC-020, ¶ 11, 146 N.M. 251, 208 P.3d 896. Finally, questions relating to sufficiency of service of process are also reviewed de novo. *See Edmonds v. Martinez*, 2009-NMCA-072, ¶ 8, 146 N.M. 753, 215 P.3d 62. We now turn to the arguments made by the Department.

**Subject Matter Jurisdiction**

**{9}**     We first address whether the district court had jurisdiction, independent of the UPA, to order the Department to deliver the property of Decedent to the PR of the Estate. When the probate case was opened and the PR was appointed for the Estate, the PR was automatically granted certain powers and obligations. The PR acquired "the same power over the title to property of the estate that an absolute owner would have" which could be exercised "without notice, hearing or order of the court." NMSA 1978, Section 45-3-711 (1975). In addition, the UPC directs that "every personal representative has a right to, and shall take possession or control of, the decedent's property" and the PR "may maintain an action to recover possession of property[.]" NMSA 1978, Section 45-3-709 (1975). Thus, the PR acted in accordance with his statutory obligation in seeking an order from the probate court directing the Department to deliver Decedent's property to the Estate. After the Department refused to honor the order, the case was transferred to the district court for enforcement of the probate court order. When the hearing was held in the district court with notice to the Department, it was a "formal proceeding" under the UPC.  Section 45-1-201(A)(19) (defining "formal proceedings" under the UPC as "proceedings conducted before a district judge with notice to interested persons").  Section 45-1-302(B) then expressly provides:

> The district court in formal proceedings shall have jurisdiction to determine title to and value of real or personal property as between the estate and any interested person, including strangers to the estate claiming adversely thereto. The district court has full power to make orders, judgments and decrees and to take all other action necessary and proper to administer justice in matters that come before it.

On its face, Section 45-1-302(B) expressly and unambiguously grants jurisdiction to the

district court to do exactly what it did here.

**{10}** The UPC notwithstanding, the Department asserts that the district court lacked subject matter jurisdiction because the UPA contains an express declaration that the Estate must utilize its procedure to acquire Decedent's property. The sole authority cited to us is Subsection (a) of Section 7-8A-15. This statute provides:

> A person, excluding another state, claiming property paid or delivered to the [Department] may file a claim on a form prescribed by the [Department] and verified by the claimant.

The Department argues that because an estate is included in the definition of a "person" in the UPA under Section 7-8A-1(12), the Legislature expressed its intent that an estate must follow the Department's procedures to the exclusion of the UPC in collecting estate assets in its custody under the UPA. At oral argument the Department added that it contends the word "may" in the statute really means "shall."[1] We are not persuaded.

**{11}** Our task in construing a statute is to give effect to the intent of the Legislature. *Oldham*, 2011-NMSC- 007, ¶ 10. To ascertain the Legislature's intent, we look first to the plain language of the statute, unless the Legislature indicates that a contrary meaning was intended. *Id.* "[W]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶ 40, 320 P.3d 1 (internal quotation marks and citation omitted). Here, there is nothing to indicate that the Legislature intended the word "may" to mean anything other than what it plainly means. Plainly, the word "may" is permissive and not mandatory. *See Webster's Third New Int'l Dictionary* 1396 (unabridged ed. 2002). Moreover, the Legislature has specifically stated in the Uniform Statute and Rule Construction Act, NMSA 1978, §§ 12-2A-1 to - 20 (1997), that when "may" is used in a statute, it "confers a power, authority, privilege or right" but when "shall" or "must" are used in a statute, they "express a duty, obligation, requirement or condition precedent." Sections 12-2A-4(A) and (B).

**{12}** Because the words "may" and "shall" have such different meanings, "a fundamental rule of statutory construction states that in interpreting statutes, the words 'shall' and 'may' should not be used interchangeably but should be given their ordinary meaning." *Thriftway Mktg. Corp. v. State*, 1992-NMCA-092, ¶ 9, 114 N.M. 578, 844 P.2d 828. Thus, "[w]here the terms 'shall' and 'may' have been juxtaposed in the same statute, ordinarily it must be concluded that the [L]egislature was aware of and intended different meanings." *Id.* In this

---

[1]The Department also repeatedly asserted at oral argument that its procedures for determining whether a person is entitled to property in its custody under the UPA are superior to a district court's. We do not comment further on this assertion, as it is not supported by reference to any facts or legal authorities.

regard, we note that in Section 7-8A-15(b), which immediately follows Subsection (a) on which the Department relies, the Legislature used these words in just this fashion.[2] We therefore conclude that the Legislature intentionally used "may" and "shall" in Sections 7-8A-15(a) and (b) to respectively convey permissive and mandatory meanings. *See Vaughn v. United Nuclear Corp.*, 1982-NMCA-088, ¶ 23, 98 N.M. 481, 650 P.3d (stating that a statutory amendment "substituting 'may' for 'shall' manifests a clear intent to make the act referred to permissive instead of mandatory").

**{13}** Here, Section 7-8A-15(a) unambiguously states that a claim "may" be filed with the Department; it does not state that a claim "must" be filed with the Department. Moreover, we conclude that the UPA and the UPC can operate together and that no intent was expressed by the Legislature that the UPA supersede the UPC in the circumstances of this case. Thus, in the exercise of its duty to act "for the best interests of [the] successors to the estate" under Section 45-3-703(A), the PR had discretion to either file a claim with the Department under Section 7-8A-15(a) or invoke the jurisdiction of the district court under Section 45-1-302(B). We therefore reject the Department's argument and hold that the district court had jurisdiction to act as it did. *See In re Estate of Harrington*, 2000-NMCA-058, ¶ 17, 129 N.M. 266, 5 P.3d 1070 (concluding, on the basis of the language in Section 45-1-302, that "the Legislature intended to confer upon district courts general civil jurisdiction in formal probate proceedings").

**Service of Process**

**{14}** The Department contends that the order of the probate court directing it to deliver Decedent's property to the Estate and the order of the district court enforcing the order was ineffectual and void because the Department was never served with process as required by Rule 1-004 NMRA. For the following reasons, we disagree.

**{15}** Probate proceedings are in rem special statutory proeedings. *See In re Estate of Harrington*, 2000-NMCA-058, ¶ 14 (stating that probate proceedings are special statutory proceedings); *In re Estates of Salas*, 1987-NMCA-018, ¶ 11, 105 N.M. 472, 734 P.2d 250 ("The procedure for probating wills and testaments in New Mexico is strictly statutory and is an action in rem."), *abrogated on other grounds by In re Estate of Harrington*, 2000-NMCA-058; *In re Hickok's Will*, 1956-NMSC-035, ¶ 30, 61 N.M. 204, 297 P.2d 866 ("A probate proceeding is a special, statutory proceeding."). Here, the PR opened an informal probate for his deceased grandfather pursuant to the UPC, and the probate court properly

---

[2]Section 7-8A-15(b) states: "Within ninety days after a claim is filed, the [Department] *shall* allow or deny the claim and give written notice of the decision to the claimant. If the claim is denied, the [Department] *shall* inform the claimant of the reasons for the denial and specify what additional evidence is required before the claim will be allowed. The claimant *may* then file a new claim with the [Department] or maintain an action under Section [7-8A-16]." (Emphasis added.)

6

issued an order directing the PR to collect the Estate's assets so they could be administered through probate. Property of Decedent was in the custody of the Department and, in keeping with the UPC, the Department was properly ordered to deliver the property to the PR. In this respect, the Department stands in the same shoes as any other custodian of property belonging to an estate, such as a bank. The Estate did not sue the Department, nor did it attempt to obtain personal jurisdiction over the Department for the purpose of stating a claim against the Department. Thus, the district court was not required to obtain personal jurisdiction over the Department by service of process. All that was required was that it have in rem jurisdiction over Decedent's estate property—and there is no argument that it did not. Nowhere does the UPC require service of process upon a custodian of a decedent's property in such circumstances.

{16}    Under the UPC, "each proceeding before the district court or probate court is independent of any other proceeding involving the same estate" unless it is a supervised administration. Section 45-3-107. When a hearing is held, "the petitioner shall cause notice of the time and place of hearing of any petition to be given to any person having an interest in the subject of the hearing." Section 45-1-401(A). As custodian of Decedent's property, the Department had an interest in the subject of the hearing, and it was entitled to notice of the hearing and an opportunity to be heard. That is precisely what was done here. At oral argument, the Department conceded it had notice of the proceedings and that it had a full and fair opportunity to be heard in the district court. If the Department had any concerns about whether the Estate was the rightful owner of the property, it had a full and fair opportunity to present those concerns to the court. The public policy of New Mexico, as expressed in the UPA, is to locate and restore property to its owner rather than to claim it by escheat. *See In re Estate of Tischler*, 97 Cal. Rptr. 510, 516 (Ct. App. 1971) (stating that by adopting the UPA, California's public policy is to restore property to the owner rather than claim it by escheat). By ordering the property to be delivered to the Estate, the district court acted in conformance with our public policy. And the district court properly ordered the property to be delivered to the Estate to be administered in accordance with the UPC so title could pass to Decedent's heirs. *See Clovis Nat'l Bank v. Callaway*, 1961-NMSC-129, ¶ 17, 69 N.M. 119, 364 P.2d 748 (stating that before title to personal property of a decedent passes, there must be a determination of heirship and an order of distribution in a probate case).

**Remaining Arguments**

{17}    The Department asserts that the district court had no jurisdiction because the Estate did not exhaust its administrative remedies. The short answer to this argument is that the Estate was not required to proceed under the UPA, and exhaustion of administrative remedies is not a prerequisite for enforcing a probate court order in the district court.

{18}    Finally, the Department argues that the Estate's claim to the property is insufficient to overcome the statutory presumption that the property is abandoned. We disagree. The Estate made a claim to the property pursuant to the UPC, and despite having been given the opportunity to contest the Estate's ownership of the property, the Department chose not to.

Moreover, in its brief, the Department concedes that it "has roughly $70,000 of unclaimed property in its custody . . . which colorably belonged to [Decedent]." There is no factual dispute that the property belongs to the Estate, and we therefore reject the Department's argument.

**CONCLUSION**

**{19}** The order of the district court is affirmed.

**{20}** **IT IS SO ORDERED.**

                                                _____
                                                **MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**RODERICK T. KENNEDY, Judge**