IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date: June 30, 2017**

**NO. S-1-SC-35349**

**In the Matter of the Estate of Edward K. McElveny, Deceased**,

**MICHAEL PHILLIPS, as Personal Representative of the Estate of Edward K. McElveny,**

Petitioner-Respondent,

v.

**STATE OF NEW MEXICO, ex rel. DEPARTMENT OF TAXATION AND REVENUE,**

Respondent-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Raymond Z. Ortiz, District Judge**

Carmela Starace
Albuquerque, NM

Law Office of Cristy J. Carbon-Gual
Cristy J. Carbon-Gual
Albuquerque, NM

for Petitioner

Hector H. Balderas, Attorney General
Peter Breen, Special Assistant Attorney General

Santa Fe, NM

for Respondent

**OPINION**

**NAKAMURA, Chief Justice.**

{1}    We hold that the administrative claim filing provisions of the Uniform Unclaimed Property Act (UPA), NMSA 1978, §§ 7-8A-1 to -31 (1997, as amended through 2007), are exclusive and mandatory and that individuals who wish to procure unclaimed property must exhaust the administrative remedies afforded them by the UPA. Consequently, estate representatives like Petitioner, Michael Phillips (Phillips), who seek to claim estate assets held as unclaimed property by Respondent, the New Mexico Department of Taxation and Revenue (Department), cannot circumvent the UPA's claim filing provisions by invoking provisions of the Uniform Probate Code (UPC), NMSA 1978, §§ 45-1-101 to -404 (1975, as amended through 2016). Although Phillips did not exhaust administrative remedies under the UPA, it is unnecessary to remand for further administrative proceedings. Two exceptions to the exhaustion requirement apply. The Department shall release to Phillips the unclaimed property it has in its custody that belongs to the estate Phillips represents.

**I.    BACKGROUND**

{2}    Edward K. McElveny (McElveny) died intestate in 1991. In April 2013, Phillips, McElveny's grandson, filed an application with the Santa Fe County Probate Court (Probate Court) to be informally appointed personal representative (PR) of

McElveny's estate (Estate). In his application, Phillips noted that the Department had custody of approximately $70,000 (the Property) that belonged to McElveny and which the Department held as unclaimed property. Phillips asked the Probate Court to order the Department to release the Property to him as PR. The Probate Court granted Phillips' request, appointed him PR, and ordered the Department to release the Property to him. Phillips then filed an unclaimed property claim with the Department. Phillips left the claim form blank and attached to the blank claim form a copy of the Probate Court's order. *In re Estate of McElveny*, 2015-NMCA-080, ¶ 3, 355 P.3d 75.

{3} In June 2013, the Department wrote to Phillips, acknowledged receipt of his claim, but informed Phillips that it was "incomplete." Phillips responded by letter, protested that he had submitted all documentation the Department required to process and approve his claim, asserted that the Department was "bound" by the Probate Court's order, and requested confirmation that the Property would be released to him no later than July 28, 2013. The Department did not reply and did not release the Property to Phillips.

{4} In August 2013, the Probate Court determined that it no longer had jurisdiction over the probate proceedings as there was "a dispute concerning the distribution of

2

the [E]state." The Probate Court transferred the case to the First Judicial District Court.

{5}     In September 2013, Phillips filed a motion with the district court asking it to enforce the Probate Court's order and to issue sanctions against the Department. The Department moved to dismiss the proceedings and argued that the district court lacked subject matter jurisdiction because Phillips failed to exhaust administrative remedies. Phillips responded and claimed that the exhaustion doctrine was inapplicable because he was "*not suing* the Department, i.e.[,] not attempting to obtain subject matter jurisdiction over the Department for the purpose of stating a claim." He denied ever having filed an "administrative claim[;]" asserted that he attempted to "handle the Decedent's [E]state through probate court[;]" argued that, as PR of the Estate, he was "simply trying to fulfill his statutory duties to gather the [E]state assets . . . [;]" and pointed out that Section 45-1-302(B) of the UPC gives the district court exclusive jurisdiction to make determinations regarding a decedent's property as between the estate and any interested party.

{6}     In February 2014, the district court entered an order in which it concluded that it had, as Phillips argued, exclusive jurisdiction under Section 45-1-302 of the UPC "to make determinations regarding a decedent's property as between [an] estate and

3

any interested party." The court concluded that the Probate Court's order should "be given full effect" and ordered the Department to release the Property to Phillips.

{7} In a subsequent order filed in March 2014, the court issued a $3,000 sanction against the Department for refusing to comply with the Probate Court's order to release the Property to Phillips. And in a still later order filed in April 2014 (but entered nunc pro tunc to the February 2014 order) the court issued the following additional findings and conclusions: Phillips "did not make an administrative claim to the Department and the Department never denied an administrative claim"; Phillips merely used the Department's claim form to deliver the Probate Court's order; and exhaustion of administrative remedies is not required where a litigant is merely trying to enforce an existing probate court order in district court. The Department appealed.

{8} The Department argued again in the Court of Appeals that the district court did not have jurisdiction to intervene and order the Department to release the Property to Phillips because Phillips failed to exhaust his administrative remedies. The Court was not persuaded and concluded that the claim filing provisions of the UPA were not exclusive and mandatory but merely "permissive." *In re McElveny*, 2015-NMCA-080, ¶¶ 11-13. Having concluded that the UPA's claim filing provisions are not exclusive, the Court determined that Phillips was not required to exhaust administrative

4

remedies under the UPA. *Id.* ¶ 17. The Court affirmed the district court's order directing the Department to release the Property to Phillips. *Id.* ¶ 19. After the Court of Appeals issued its opinion, Phillips filed a motion for attorneys' fees as prevailing party under Rule 12-403 NMRA in which he requested approximately $12,500. The Court of Appeals granted his motion.

{9} The Department filed a petition for a writ of certiorari with this Court. We granted the petition, exercising our jurisdiction under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, § 34-5-14(B) (1972) to determine whether a litigant seeking unclaimed property must exhaust administrative remedies with the Department. To resolve this issue, we must first address whether the claim filing provisions of the UPA are exclusive. *See State ex rel. Norvell v. Ariz. Pub. Serv. Co.*, 1973-NMSC-051, ¶ 31, 85 N.M. 165, 510 P.2d 98 ("'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course." (internal quotation marks and citations omitted)).

**II.    DISCUSSION**

**A.    Standard of Review**

{10} Whether the claim filing provisions of the UPA are exclusive and whether

5

individuals seeking unclaimed property must exhaust administrative remedies are both questions of statutory interpretation. *See Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 24, 147 N.M. 523, 226 P.3d 622 ("The exclusivity of any statutory administrative remedy turns on legislative intent." (internal quotation marks and citation omitted)); *see also Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 501 (1982) ("[T]he initial question whether exhaustion is required should be answered by reference to congressional intent . . . ."). "The meaning of language used in a statute is a question of law that we review de novo." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61.

## B. Exclusivity

{11} To determine whether the administrative procedures of the UPA are exclusive, we must examine "the comprehensiveness of the administrative scheme, the availability of judicial review, and the completeness of the administrative remedies afforded." *Lion's Gate Water*, 2009-NMSC-057, ¶ 24 (internal quotation marks and citation omitted). "An exclusive and comprehensive administrative process is one that provides for a plain, adequate, and complete means of resolution through the administrative process to the courts." *Id.* (internal quotation marks and citations omitted).

{12}     The Court of Appeals concluded that the administrative procedures of the UPA are not exclusive and reached this conclusion by focusing on Section 7-8A-15. *In re McElveny*, 2015-NMCA-080, ¶¶ 10-13. The Court noted that Section 7-8A-15(a) provides that "[a] person . . . claiming property paid or delivered to the administrator may file a claim on a form prescribed by the administrator and verified by the claimant[,]" and observed that "may" is ordinarily understood as permissive. *In re McElveny*, 2015-NMCA-080, ¶¶ 10-11. The Court then noted that the word "shall," a mandatory term, appears in Section 7-8A-15(b), *In re McElveny*, 2015-NMCA-080, ¶ 12, and deduced that the juxtaposition of "may" and "shall" suggests that "may" must be understood as permissive in light of the fact that it appears in close proximity to a mandatory term. *Id.* ¶¶ 11-12; *see also Thriftway Mktg. Corp. v. State*, 1992-NMCA-092, ¶ 9, 114 N.M. 578, 844 P.2d 828 ("Where the terms 'shall' and 'may' have been juxtaposed in the same statute, ordinarily it must be concluded that the legislature was aware of and intended different meanings." (citation omitted)). Given the plain meaning of the term "may" and its proximity to a mandatory term, the Court was persuaded that our Legislature intended for Phillips to have discretion. *In re McElveny*, 2015-NMCA-080, ¶ 13. He could "either file a claim with the Department under Section 7-8A-15(a) or invoke the jurisdiction of the district court

7

under Section 45-1-302(B)." *In re McElveny*, 2015-NMCA-080, ¶ 13. We understand this interpretive approach, but do not agree with it in this instance.

{13}    The primary objective in statutory construction is to determine and give effect to legislative intent. *Bradbury & Stamm Constr. Co. v. Bureau of Revenue*, 1962-NMSC-078, ¶ 10, 70 N.M. 226, 372 P.2d 808 ("[A]ll rules of statutory construction are but aids in arriving at the true legislative intent." (citation omitted)). "The question whether a statutory requirement is mandatory or merely directory is answered by looking to the intent of the statute." *Stokes v. Tatman*, 1990-NMSC-113, ¶ 10, 111 N.M. 188, 803 P.2d 673. The Court of Appeals arrived at its conclusion regarding legislative intent by focusing narrowly on the words "may" and "shall." Our focus is broader; we must construe the entire statute as a whole so that all of its provisions are considered in relation to one another and so that all parts are given effect. *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236; *State v. Herrera*, 1974-NMSC-037, ¶ 8, 86 N.M. 224, 522 P.2d 76 ("We attempt to construe statutes so that meaning and effect will be given to every part thereof."). Looking to the statute as a whole points us towards a conclusion diametrically different than that reached by the Court of Appeals.

8

{14} Section 7-8A-7 directs the Department to keep records related to unclaimed property, including records of the identity of the last known owner. Section 7-8A-7(B)(2). The Legislature's decision to require the Department to possess the information necessary to most effectively decide unclaimed property matters suggests that the Legislature intended the Department to decide these matters in the first instance. *Cf. Groendyke Transp., Inc. v. N.M. State Corp. Comm'n*, 1984-NMSC-067, ¶ 27, 101 N.M. 470, 684 P.2d 1135 ("[T]he special knowledge and experience of state agencies should be accorded deference." (internal quotation marks and citation omitted)).

{15} Section 7-8A-10(b) instructs that the state "assumes custody and responsibility for the safekeeping of the [unclaimed] property." As the custodian of unclaimed property, the Department has a duty to ensure that unclaimed property is returned only to rightful owners. *See* 1 Am. Jur. 2d Abandoned, Lost, and Unclaimed Property § 44 (explaining that the UPA is "custodial in nature" and that "[t]he objectives of the [UPA] are to protect unknown owners by finding them and restoring their property to them . . . .."); 30A C.J.S. Escheat § 12 ("Under a statute such as the [UPA], the state takes custody of unclaimed property and has full use of it until the rightful owner comes forward to claim it."). Because our Legislature imposed a duty upon

9

the Department to ensure unclaimed property is returned only to rightful owners, the Legislature must have intended the Department to have some responsibility in determining who the rightful owners of unclaimed property might be. And if the Legislature intended the Department to have this responsibility, it must have intended the Department to exercise this responsibility in the first instance as administrative agencies do not review district court determinations. Construing the UPA to permit some entity other than the Department to make these first instance determinations would frustrate legislative intent. *See State v. Young*, 2004-NMSC-015, ¶ 9, 135 N.M. 458, 90 P.3d 477 (observing that statutes should be construed so as to facilitate their operation and achieve the Legislature's goals, and rejecting the defendants' proposed construction on grounds that it would frustrate legislative intent).

{16} Section 7-8A-15(b) is significant in a way not contemplated by the Court of Appeals. It provides that "the administrator shall allow or deny" claims for unclaimed property. *Id.* The "administrator" is "the [Department], the secretary of [the Department] or any employee of the [D]epartment who exercises authority lawfully delegated to him by the secretary[.]" Section 7-8A-1(1). If the administrative procedures of the UPA are not exclusive, and if some individual or tribunal other than those specified by the UPA may resolve whether a claimant

seeking unclaimed property should or should not be granted that property, then Section 7-8A-15(b) would be rendered a nullity. *See Sec. Trust v. Smith*, 1979-NMSC-024, ¶ 11, 93 N.M. 35, 596 P.2d 248 ("[A] statute should not be construed in such a way as to nullify certain of its provisions."). In other words, if the Department "shall allow or deny claims," then the Department *must* adjudicate those claims.

{17}  Section 7-8A-16(A) establishes an appellate process by which the Department's decisions regarding unclaimed property may be appealed to district court. Section 7-8A-16(B) addresses the appellate rights of claimants whose claims have "not been acted upon within ninety days" after filing with the Department. They "may maintain an original action to establish the claim in the district court for the first judicial district, naming the administrator as a defendant." *Id.* We must construe the UPA in such a way that the procedural directives of the statutory scheme are given full effect. *Herrera*, 1974-NMSC-037, ¶ 8. Under the Court of Appeals construction, a claimant can bypass the Department altogether, adjudicate the unclaimed property matter in the first instance in district court, and ignore Sections 7-8A-16(A) and (B). Moreover, a claimant could proceed in whichever judicial district court has venue under the UPC. *See* § 45-3-201(A) (establishing venue requirements for probate

11

proceedings). This is inconsistent with Section 7-8A-16(B) which specifies the judicial district in which certain claims must be brought.

{18} Our review of these provisions leads us to conclude that our Legislature intended the UPA's administrative process to be exclusive and mandatory. The administrative process the varying provisions of the UPA establishes is plain, adequate, and complete. That process includes mechanisms that permit claim filing, identifies the entity responsible for deciding claims, and specifies how appeals to district court shall occur. Section 7-8A-16(A)-(B) Even if the Court of Appeals is correct that the term "may" is inescapably permissive, it is possible to accept this fact while still concluding that our Legislature intended Section 7-8A-15(a) to be mandatory. "May" does not necessarily connote that other, alternative avenues exist to pursue unclaimed property apart from filing a claim with the Department. "May" means only that a potential claimant *may elect* to file a claim with the Department or *may elect not* to file a claim and forego any attempt to procure unclaimed property. *Accord Lucero v. Bd. of Regents of Univ. of N.M.*, 2012-NMCA-055, ¶ 15, 278 P.3d 1043 (interpreting the term "may" in the grievance provisions of an employee handbook as permissive but only to the extent that the term denotes that an employee *may file* a grievance or *may elect to not file* a grievance and forego the grievance

12

process, accept the disciplinary decision, and decline to challenge the disciplinary action). We find nothing in the UPC that causes us to doubt our conclusion that the administrative process of the UPA is exclusive.

{19} Phillips was not acting in accordance with his statutory obligations under the UPC when he sought and obtained an order from the Probate Court directing the Department to release the Property to him. *Contra In re McElveny*, 2015-NMCA-080, ¶ 9. Phillips could not simply take control of the Property upon his appointment as PR as the Department had custody of the Property as unclaimed property. Phillips could, of course, procure the Property by filing a claim with the Department and by establishing that the Property is Estate property. But this is a form of adjudication in which the Probate Court has no authority to engage.

{20} Probate courts are creatures of statute and their powers are entirely derived from statute. *In re Hickok's Will*, 1956-NMSC-035, ¶ 30, 61 N.M. 204, 297 P.2d 866; Curtis Hillyer, *Bancroft's Probate Practice* § 16-17, at 38-39 (2d ed. 1950) (observing that probate proceedings are "statutory" and that "such courts are creatures of the law and limited in their jurisdiction"); *cf. Caron v. Old Reliable Gold Min. Co.*, 1904-NMSC-016, ¶ 9, 12 N.M. 211, 78 P. 63 (same). The authority of New Mexico's probate courts derives from the UPC. *In re Estate of Harrington*, 2000-NMCA-058,

¶ 15, 129 N.M. 266, 5 P.3d 1070. Under the UPC, probate courts may preside over and may act only in informal probate proceedings. Section 45-1-302(C). Informal probate proceedings are nonadjudicatory. American Law Institute, *Uniform Probate Code Practice Manual Volume 1*, § 2, at 21 (2d ed. 1977); *cf.* Hillyer, *supra,* § 27, at 70 ("It is thoroughly established that in probate proceedings title to property as between the estate, the heirs or devisees, and a third person may not be tried."). The Probate Court could not adjudicate whether Phillips was entitled to the Property because it is not empowered to adjudicate. Thus, the Probate Court's order commanding the Department to release the Property to Phillips was "nugatory" and is vacated. *See* Hillyer, *supra*, § 28, at 74 ("Acts of the [probate] court in excess of the powers conferred upon it are nugatory and have no binding effect . . . .").

{21} While Section 45-1-302(B) of the UPC grants district courts sitting in probate general civil jurisdiction, *In re Harrington*, 2000-NMCA-058, ¶¶ 17-20, the UPA (which was enacted after the UPC) specifically delegated to the Department authority to adjudicate unclaimed property matters in the first instance and provides claimants dissatisfied with the Department's determination a path to seek review in district court. Section 7-8A-15(a), -16. A conferral of specific authority trumps any previous conferral of general authority. *See State v. Cleve*, 1999-NMSC-017, ¶ 17, 127 N.M.

240, 980 P.2d 23 (discussing the canon of statutory construction known as the general/specific statute rule).  Accordingly, we reject the assertion that Section 45-1-302(B) "unambiguously grants jurisdiction to the district court to do exactly what it did here."  *In re McElveny*, 2015-NMCA-080, ¶ 9.  The district court did not have jurisdiction to determine in the first instance that the Property was Estate property and circumvent the claim filing and appellate provisions of the UPA.  In addition, the district court could not simply enforce the Probate Court's order as the Probate Court had no authority to order the Department to release the Property to Phillips.  The district court's order directing the Department to relinquish the Estate property to Phillips is vacated.

**C.    Exhaustion**

{22}    "The doctrine of administrative exhaustion arose as a way to coordinate the roles of the administrative and judicial branches, both of which are charged with regulatory duties."  *Lobato v. State Env't Dep't*, 2012-NMSC-002, ¶ 12, 267 P.3d 65.  The requirement that administrative remedies must be exhausted originates from two different sources: statutes and the common law.  *U.S. Xpress, Inc. v. N.M. Taxation & Revenue Dep't*, 2006-NMSC-017, ¶ 12, 139 N.M. 589, 136 P.3d 999. The contours and rigidity of the requirement differ greatly depending upon which of these two

15

sources the exhaustion requirement flows and, therefore, exhaustion is best thought of as "two distinct legal concepts." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004).

{23}    "If a statute explicitly requires a party to exhaust particular remedies as a prerequisite to judicial review . . . the statutorily mandated exhaustion requirements are jurisdictional.  A court cannot excuse a petitioner from complying with an explicit and detailed statutory duty to exhaust administrative remedies."  II Richard J. Pierce, Jr., *Administrative Law Treatise*, § 15.2, at 1219-20; *cf. Am. Fed'n of State v. Bd. of Cty. Comm'rs of Bernalillo Cty.*, 2016-NMSC-017, ¶ 14, 373 P.3d 989 ("If a statute creates a right and provides that only a specific class of persons may petition for judicial review of an alleged violation, then the courts lack the jurisdiction to adjudicate that alleged violation when the petition is brought by a person outside of that class.").  "The common law duty[, on the other hand,] is flexible and pragmatic. It is subject to several judge-made exceptions."  II Pierce, *supra*, § 15.2, at 1219. This non-jurisdictional form of exhaustion is firmly established and serves important functions which have been cataloged by the United States Supreme Court and leading treatises.  *See McKart v. United States*, 395 U.S. 185, 193-95 (1969); *see also* II Pierce, *supra*, § 15.2, at 1222.  Several of these functions are discussed in the analysis

that follows.

{24}    "A mere reference to the duty to exhaust administrative remedies conferred in an agency organic act is not enough to create a statutory duty to exhaust particular remedies."  II Pierce, *supra*, § 15.3, at 1245.  "A statute creates an independent duty to exhaust only when it contains 'sweeping and direct' statutory language indicating that there is no . . . jurisdiction prior to exhaustion . . . ."  *Id.*; *see, e.g.*, *U.S. Xpress*, 2006-NMSC-017, ¶¶ 6-15 (concluding that statutory exhaustion applicable in light of the fact that the Legislature clearly expressed its intent "to require that tax refund claims proceed according to the requirements of the Tax Administration Act."). There is no direct and unequivocal statement in the UPA requiring exhaustion of administrative remedies.  Nevertheless, we conclude that non-jurisdictional exhaustion is required for prudential reasons.

{25}    The reasons for applying "the exhaustion doctrine in cases where the statutory requirement of exclusivity is not so explicit, are not difficult to understand." *McKart*, 395 U.S. at 193.  First, "[t]he agency, like a trial court, is created for the purpose of applying a statute in the first instance."  *Id.* at 193-94.  As we have already shown, our Legislature intended for the Department to decide unclaimed property matters in the first instance.  Second, "[c]ertain very practical notions of judicial efficiency come

17

into play as well." *Id.* at 195. Because the Department is required to keep records of last known owners, it is best positioned to determine who is entitled to unclaimed property and who is not. If exhaustion were not required and if a claimant could proceed initially before some tribunal other than the Department, time and effort might be expended unnecessarily attempting to resolve questions the Department is uniquely situated to address. Third, "it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages." *Id.* at 194. The Department's initial reticence to Phillips' claim might have dissipated had he simply submitted a completed claim form. This thought must remain speculation, however, because Phillips declined to pursue the administrative process with the Department to its end. Fourth, "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *Id.* at 195. Phillips accused the Department of a pattern and practice of needlessly withholding unclaimed property from rightful owners. We make no judgment about the merits of this accusation and make note of it only to illuminate that there are claimants who would prefer not to proceed before the Department. If the preferences of claimants governed, the Legislature's statutory scheme and the

18

autonomy of the Department could be undermined. Lastly, unnecessary duplication and conflicts may arise if exhaustion is not mandated. *Whitney Nat'l Bank in Jefferson Par. v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 422 (1965). The Department declined to relinquish the Property to Phillips and that decision was never appealed. Instead, Phillips asked the district court to decide the very issue that he initiated administrative proceedings to resolve. In effect, two tribunals came to conflicting conclusions in independent proceedings about the same matter. This is problematic, but this difficulty is easily remedied by requiring exhaustion. For these reasons, we conclude that Phillips was required to exhaust administrative remedies with the Department. But this conclusion in no way precluded Phillips from simultaneously initiating probate proceedings nor does it empower the Department to adjudicate probate matters.

{26}     When—as in the present case—an individual seeks to be appointed PR of an estate and then seeks to procure estate assets existing as unclaimed property for purposes of estate settlement and distribution, two lines of inquiry are opened. First, should this individual be appointed PR? Second, does the unclaimed property belong to the estate the PR represents? These are distinct and independent questions. The first must be resolved by the probate and district courts in probate proceedings under

19

the provisions of the UPC. The second must be addressed by the Department under the provisions of the UPA. The probate proceedings and unclaimed property proceedings may proceed simultaneously and in parallel. Each adjudicative body is responsible for discrete determinations essential to one goal—the settlement and distribution of the estate. Explaining how these general principles apply in this case will aid comprehension of our conclusion.

{27}     Phillips correctly initiated proceedings under the UPC to be appointed PR and correctly initiated administrative proceedings under the UPA by filing a claim with the Department as PR of the Estate. The district court's determinations that Phillips did not file a claim with the Department and that the Department did not deny a claim submitted by Phillips are not supported by substantial evidence. *See Getz v. Equitable Life Assurance Soc'y of U. S.*, 1977-NMSC-018, ¶ 14, 90 N.M. 195, 561 P.2d 468 (findings not supported by substantial evidence cannot be sustained on appeal). There is no genuine dispute that Phillips filed a claim with the Department and that the Department rejected that claim. *In re McElveny*, 2015-NMCA-080, ¶ 3. Phillips went awry when he asked the Probate Court to order the Department to release the money to him and when he asked the district court sitting in probate to enforce the Probate Court's order. These requests irreparably entangled two distinct

20

proceedings. If Phillips was dissatisfied with the Department's decision in the UPA proceedings, he was obligated to exhaust administrative remedies and appeal that decision under the applicable appellate provision of the UPA. He did not.

**D.     Exceptions to Exhaustion**

{28}     If the UPA contained an express and unequivocal exhaustion requirement, we would be required to remand this matter to the Department so that the administrative proceedings could be brought to their conclusion. *See I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) ("Generally speaking, a [reviewing court] should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). But because exhaustion is required in this case not for statutory, jurisdictional reasons but for prudential, non-jurisdictional reasons, we have discretion. *See Rodrigues v. Donovan*, 769 F.2d 1344, 1348 (9th Cir. 1985) ("The judicially-created exhaustion doctrine does not limit jurisdiction; rather, it permits courts to decide whether to exercise jurisdiction."); *see also Lobato*, 2012-NMSC-002, ¶ 12 ("A rigid adherence to administrative exhaustion is not required in circumstances where the doctrine is inappropriate.").

{29}     The Department rejected Phillips' claim because it was "incomplete," and offered three justifications for this conclusion: (1) Phillips failed to submit

21

documentation "showing that the [P]roperty . . . would devolve to [him] alone under the applicable law of heirship[;]" (2) a "[q]uitclaim [d]eed" Phillips submitted was illegible; and (3) "the application should be made directly to [the Department] as unclaimed property custodian rather than probate." Because the Department cited these specific grounds as the basis for its decision, we need not remand this particular matter for further administrative proceedings. Two exceptions to the exhaustion requirement apply in this case.

{30} "A party to administrative proceedings need not exhaust administrative remedies when the agency has clearly acted in excess of its statutory authority." 5 Jacob A. Stein et al., *Administrative Law* § 49.02[3], at 49-107 (2015). The Department's first justification is not legally valid as it constitutes action beyond the scope of the Department's authority. Phillips was not required to submit documentation to the Department showing that the Property would devolve to him alone under our probate laws. The Department had only two questions before it: Is Phillips the lawfully appointed PR of the Estate? Does the Property belong to the Estate? "There is no factual dispute that the [P]roperty belongs to the Estate . . .[,]" *In re McElveny*, 2015-NMCA-080, ¶ 18, and Phillips did not apply to the Department in his individual capacity but as PR of the Estate and there has never been any doubt

that Phillips was lawfully appointed PR. Who ultimately receives the Property (or portions of it) once Phillips settles and distributes the Estate's assets is a probate question, and nothing in the UPA suggests that our Legislature intended to empower the Department to involve itself in or decide probate matters. These matters are governed by the UPC and lie beyond the scope of the Department's statutory authority. Indeed, the very fact that the UPA expressly authorizes an "estate" to file a claim for unclaimed property indicates that our Legislature anticipated that estate representatives appointed in independent proceedings under the UPC might find it necessary to apply with the Department to obtain estate assets held by the Department as unclaimed property. *See* § 7-8A-15(a) (stating that a "person" may file a claim with the Department for unclaimed property); Section 7-8A-1(12) (defining the term "person" as used in the UPA to include an "estate"). These provisions do not suggest that our Legislature ever intended for the Department to make judgments about the propriety of a probate appointment or how estate assets should be distributed. We need not remand to permit Phillips an opportunity to submit to the Department documentation about who will ultimately receive shares of the Property as the Department has no authority to require Phillips to provide this documentation.

{31} A litigant's failure to exhaust administrative remedies can be excused if

23

exhaustion would be futile. *Lobato*, 2012-NMSC-002, ¶ 12; II Pierce, *supra*, § 15.2, at 1229-30. Futility, as an exception to exhaustion requirements, applies where "the agency has deliberately placed an impediment in the path of a party, making an attempt at exhaustion a useless endeavor." 5 Stein, *supra*, § 49.02[4], at 49-116 to 49-118. The futility exception to exhaustion applies in light of the second and third justifications offered by the Department for its decision.

{32} We cannot see how the second justification offered by the Department—a quitclaim deed Phillips submitted was illegible—can have any bearing on whether Phillips is the lawfully appointed PR of the Estate and whether the Property, a sum of money, is Estate property. *See Deed*, Black's Law Dictionary (10th ed. 2014) (defining "quitclaim deed" as "[a] deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid."). The third justification offered by the Department is not entirely clear. We understand the Department to be asserting that Phillips wrongly assumed that he could submit the Probate Court order directing the Department to release the Property to him in place of a completed unclaimed property claim form. While we agree with the Department that a claimant seeking unclaimed property must complete the claim form "prescribed" by the Department, Section 7-8A-15(a), there is no genuine dispute

24

that the Property is Estate property and that Phillips is the PR of the Estate. Thus, we cannot see what the Department would have gained from requiring Phillips to complete the form. Courts and administrative tribunals alike should not sacrifice the efficient administration of the law at the service of empty formalism. Neither the second nor third justification illuminates some principle that explains the Department's long held opposition to Phillips' claim. What we see is needless adversity. Accordingly, remanding for further proceedings is futile.

{33}     It is unnecessary to remand this matter for further administrative proceedings. The Department shall release the Property to Phillips.

**E.     Sanctions and Attorneys' Fees**

{34}     The district court imposed a $3,000 sanction on the Department because it failed to "act in accordance with the [Probate] Court['s] Order" to release the Property to Phillips. As already noted, the Probate Court did not have authority to order the Department to release the Property to Phillips and the Department was not required to comply with this aspect of the Probate Court's order. Thus, the imposition of the $3,000 sanction was an abuse of discretion and is vacated. *See Gonzales v. Surgidev Corp.*, 1995-NMSC-047, ¶ 33, 120 N.M. 151, 899 P.2d 594 (stating that a district court's award of monetary sanctions is reviewed for an abuse of discretion).

25

{35} The Court of Appeals awarded Phillips attorneys' fees as prevailing party on appeal. *See* Rule 12-403(A) NMRA ("Unless otherwise provided by law, the appellate court may, in its discretion, award costs to the prevailing party on request."); Rule 12-403(B)(3) ("Allowable costs may include . . . reasonable attorney fees for services rendered on appeal in causes where the award of attorney fees is permitted by law."). This ruling cannot stand given our discussion. We agree with the Department that the UPA claim filing provisions are exclusive and mandatory and that Phillips was required to exhaust administrative remedies. But we also agree with Phillips that the Department acted outside its statutory authority in denying Phillips' claim and agree that the Department must release the Property to him without any further delay. Both parties have prevailed on ceratin issues and, therefore, neither party is entitled to an award of costs as "prevailing party" under Rule 12-403. *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 33, 127 N.M. 654, 986 P.2d 450 ("We also conclude that neither party is entitled to recover allowable costs [under Rule 12-403(A)] . . . because the Court ruled in favor of each party on one issue . . . . Thus, there is no prevailing party . . . .").

**III.   CONCLUSION**

{36} We reach the same conclusion as the Court of Appeals, but arrive at this end

26

by a different course. The Court of Appeals' opinion is reversed to the extent that its analysis and conclusions diverge from ours. The sanctions imposed upon the Department by the district court are vacated as is the award of attorneys' fees granted by the Court of Appeals in favor of Phillips. The Department shall release the Property to Phillips without delay, and we remand this matter to the Department for this sole purpose.

{37}    **IT IS SO ORDERED.**


_____
**JUDITH K. NAKAMURA, Chief Justice**

**WE CONCUR:**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**

27

_____

**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**

28