The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: August 25, 2022

**NO. S-1-SC-38570**

**TOBBY ANDERSON, BRYN ARNOLD,**
**ANITA CARRILLO, AMANDA ELLER,**
**SEAN GODKIN, PAMELA HOFFSCHNEIDER,**
**HEIDI MACHACEK, EDUARDO TRISTE,**
**NEW MEXICO CRIMINAL DEFENSE LAWYERS**
**ASSOCIATION, and AMERICAN CIVIL LIBERTIES**
**UNION OF NEW MEXICO,**

Plaintiffs-Appellants,

v.

**STATE OF NEW MEXICO;**
**MICHELLE LUJAN GRISHAM,**
**Governor, State of New Mexico;**
**ALISHA TAFOYA LUCERO, Secretary,**
**New Mexico Corrections Department;**
**and MELANIE MARTINEZ, Director,**
**New Mexico Probation and Parole,**

Defendants-Appellees.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**Matthew J. Wilson, District Judge**

Law Office of Ryan J. Villa
Ryan J. Villa
Albuquerque, NM

Faegre Drinker Biddle & Reath LLP
John P. Mandler
Minneapolis, MN
Christopher J. Casolaro
Denver, CO

for Appellants


Holly Agajanian, Chief General Counsel
Maria S. Dudley, Associate General Counsel
Kyle P. Duffy, Associate General Counsel
Santa Fe, NM

for Appellee Governor Michelle Lujan Grisham


Hector H. Balderas, Attorney General
Neil R. Bell, Assistant Attorney General
Nicholas M. Sydow, Civil Appellate Chief
Santa Fe, NM

for Appellees State of New Mexico; Alisha Tafoya Lucero, Secretary, New Mexico Corrections Department; Melanie Martinez, Director, New Mexico Probation and Parole

**OPINION**

**VIGIL, Justice.**

{1}     Eight named inmates (Named Plaintiffs) and two nonprofit organizations (the ten Plaintiffs, collectively) filed an amended complaint in district court seeking a mixture of a classwide writ of habeas corpus and classwide injunctive and declaratory relief. Plaintiffs allege that the State's management of COVID-19 in New Mexico prisons violates inmates' rights under the New Mexico Constitution. The district court dismissed the amended complaint, concluding that it lacked subject-matter jurisdiction because the Named Plaintiffs failed to exhaust the internal grievance procedures of the New Mexico Corrections Department (NMCD) before seeking relief, as required by NMSA 1978, Section 33-2-11(B) (1990). Agreeing with the result, but not all of its reasoning, we affirm the district court.

{2}     We hold that Section 33-2-11(B) imposes an exhaustion requirement for statutorily created rights such as declaratory relief, *see Am. Fed'n of State, Cnty. & Mun. Emps. v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.* (*AFSCME*), 2016-NMSC-017, ¶¶ 13-14, 373 P.3d 989, but that it is Rule 5-802(C) NMRA which imposes an independent duty to first exhaust the administrative remedies of the NMCD before petitioning for writs of habeas corpus. We also hold that although habeas corpus actions are not governed by our Rules of Civil Procedure, *see Allen v. LeMaster*,

2012-NMSC-001, ¶¶ 15-17, 267 P.3d 806, procedures analogous to civil procedure Rule 1-023 NMRA are proper for classwide habeas relief. And to satisfy the habeas corpus exhaustion requirement under Rule 5-802(C) for an entire plaintiff class, one or more named class members must exhaust administrative remedies for each claim. Because no Named Plaintiff exhausted or sought to exhaust NMCD's internal grievance procedures, we affirm.

## I.      BACKGROUND

{3}      Plaintiffs filed a complaint and an amended complaint in district court claiming that the State of New Mexico, the Governor of the State of New Mexico, the Secretary of NMCD, and the Director of New Mexico Probation and Parole Division of NMCD (collectively, Defendants) in their handling of COVID-19 in New Mexico prisons violated inmates' rights to substantive and procedural due process, freedom of speech, and freedom from cruel and unusual punishment under the New Mexico Constitution. Plaintiffs alleged that Defendants allowed COVID-19 to run "rampant in New Mexico's prisons" by refusing to enforce their own mandates for social distancing, mask-wearing, heightened hygiene practices, and safe quarantine and treatment.

{4}      As a result, Plaintiffs sought a classwide writ of habeas corpus and classwide relief under Rule 1-023(B)(2) consisting of the release of "all current and future

persons held in any New Mexico prison facility during the course of the COVID-19 pandemic" as well as declaratory and injunctive relief. Currently, the NMCD home page reports about 6,000 inmates in New Mexico prisons.[1] The injunctive relief requested was for adequate testing of COVID-19, requiring prison staff to wear face coverings, providing inmates with face coverings and access to sanitation services, enforcement of social distancing within the prison, staggering of meal and recreation time, designating a room for evaluation of individuals with COVID-19 symptoms, and placing individuals with COVID-19 under medical isolation.

{5}     Despite their claims being directly related to their conditions of confinement and treatment by NMCD, Named Plaintiffs did not avail themselves of NMCD's internal grievance procedures. Under NMCD policy, emergency grievances "shall be forwarded without substantive review immediately to the Warden," "shall receive an expedited response at every level . . . [and] in no event will the time for response exceed three (3) working days from the time the grievance is received by the Grievance officer," and "may be immediately appealed to the State wide Grievance/Disciplinary Appeals Manager if the emergency grievance after investigation and Warden's review cannot resolve the issues presented at their

---

[1]Available at https://www.cd.nm.gov/ (last visited Aug. 9, 2022).

facility level." *See* New Mexico Corrections Department, *Inmate Grievances* (June 14, 2018).[2]

{6} In the district court, Plaintiffs acknowledged that none of the Named Plaintiffs filed emergency grievances but argued that some class members—meaning any current New Mexico inmate—did file grievances and received no determination from NMCD. Plaintiffs also argued that the Named Plaintiffs did not avail themselves of NMCD's grievance procedures because "NMCD cannot grant release, the relief requested, on its own," thus making a futility argument. Defendants moved to dismiss, arguing that the district court lacked subject-matter jurisdiction because the Named Plaintiffs failed to exhaust administrative remedies under Section 33-2-11(B).

{7} Section 33-2-11(B) provides:

> No court of this state shall acquire subject-matter jurisdiction over any complaint, petition, grievance or civil action filed by any inmate of the corrections department with regard to any cause of action pursuant to state law that is substantially related to the inmate's incarceration by the corrections department until the inmate exhausts the corrections department's internal grievance procedure.

---

[2]Available at https://www.cd.nm.gov/wp-content/uploads/2019/06/CD-150500.pdf (last visited Aug. 9, 2022).

4

{8}      The district court issued an order dismissing the amended complaint for lack of subject-matter jurisdiction. The district court ruled that accepting the allegations in the amended complaint as true, there was no allegation that the Named Plaintiffs exhausted or tried to exhaust the NMCD's internal grievance procedures. The district court concluded that because all of Plaintiffs' claims are "directly related to [Named Plaintiffs'] confinement and treatment by NMCD," they are subject to Section 33-2-11(B). The district court also ruled that a futility exception to exhaustion of administrative remedies does not apply because "[t]he clear legislative command of Section 33-2-11(B) requires exhaustion as a precondition to subject matter jurisdiction." And even if a futility exception does apply, the district court determined that "[e]xhaustion would not be futile in this case because the NMCD has the authority to address the conditions in New Mexico's correctional facilities, a remedy that would address the majority of the allegations" made by the Named Plaintiffs. As to the nonprofit organizations, the district court held that to allow them to pursue a claim as plaintiffs when the Named Plaintiffs representing the purported class have not exhausted their administrative remedies would "frustrate the legislative purpose of Section 33-2-11(B) and would lead to an absurd result." The district court dismissed the amended complaint, and Plaintiffs appealed to the Court of Appeals.

5

{9}     "Because the core relief sought in the [amended] complaint requires the issuance of the writ of habeas corpus and [because] all of the relief sought is inextricably connected to that request," the Court of Appeals certified all questions on appeal to this Court. *See* Rule 5-802(N)(2) (directing that the New Mexico Supreme Court has exclusive appellate jurisdiction over denials of habeas corpus petitions). We accepted certification.

## II.     DISCUSSION

{10}     Plaintiffs make three arguments on appeal. First, the district court erred in concluding that the exhaustion requirement under Section 33-2-11(B) is jurisdictional because it implies an unconstitutional limitation by the Legislature on district courts' habeas corpus jurisdiction and on the writ of habeas corpus itself. Second, in holding that no futility exception applies, the district court erred because a material factual dispute exists as to whether exhaustion is futile. Finally, the district court erred in dismissing the nonprofit organizations on the basis that the grievance process applies only to inmates. We first consider the arguments related to exhaustion and futility and then turn to the argument concerning the nonprofit organizations.

## A. Standard of Review

{11} All issues in Plaintiffs' arguments—the proper interpretation of Section 33-2-11(B), the district court's granting of a motion to dismiss for lack of jurisdiction, and the nonprofit organizations' standing to bring a claim—raise questions of law which we review de novo. *See U.S. Xpress, Inc. v. N.M. Tax'n & Revenue Dep't*, 2006-NMSC-017, ¶ 6, 139 N.M. 589, 136 P.3d 999 ("The meaning of language used in a statute is a question of law that we review de novo." (internal quotation marks and citation omitted)); *see also Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 6, 132 N.M. 207, 46 P.3d 668 ("In reviewing an appeal from an order granting . . . a motion to dismiss for lack of jurisdiction, the determination of whether jurisdiction exists is a question of law which an appellate court reviews de novo."); *ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 6, 144 N.M. 471, 188 P.3d 1222 (determining whether a party has standing to challenge a law is a question of law subject to de novo review).

## B. Section 33-2-11(B) Is Jurisdictional for Rights Established by the Legislature

{12} Article VI, Section 13 of the New Mexico Constitution provides, "The district courts, or any judge thereof, shall have *power to issue writs of habeas corpus*, mandamus, injunction, quo warranto, certiorari, prohibition and all other writs,

7

remedial or otherwise, in the exercise of their jurisdiction." (Emphasis added.) Plaintiffs argue that because district courts' habeas jurisdiction is constitutionally granted, it cannot be circumscribed or restrained by the Legislature. Plaintiffs contend that the district court's determination that Section 33-2-11(B)'s exhaustion requirement is "a precondition to state courts' jurisdiction over the Plaintiffs' request for a writ of habeas corpus" recognizes constitutional authority in the Legislature that it does not have. Plaintiffs assert that the right to seek habeas relief is "enshrined in the [New Mexico] Bill of Rights" and that Section 33-2-11(B) cannot limit this fundamental constitutional right. *See* N.M. Const. art. II, § 7 ("The privilege of the writ of habeas corpus shall never be suspended.").

{13}     We conclude that the district court correctly determined that Section 33-2-11(B)'s exhaustion requirement applies to statutory duties. Nevertheless, the district court erred in concluding that Section 33-2-11(B)'s exhaustion requirement applies to all of Plaintiffs' claims, including the claims for writs of habeas corpus.

{14}     We have held that the "Legislature *may establish a right* and predicate a court's power of review on the fact that suit is brought by one of a particular class of plaintiffs or petitioners." *AFSCME*, 2016-NMSC-017, ¶ 14 (emphasis added). Or said another way, if a right is created by statute, the Legislature may limit the court's power of review for that right. *See id.* Such a limitation "is not a deprivation or ouster

8

of jurisdiction of the courts, but a postponement until the [agency] has passed upon the complaint." *Smith v. S. Union Gas Co.*, 1954-NMSC-033, ¶ 10, 58 N.M. 197, 269 P.2d 745. Exhaustion of administrative remedies is one such limitation, which is not to say that imposing a duty to exhaust is always statutorily mandated.

{15}    The requirement of exhaustion of administrative remedies "originates from two different sources: statutes and the common law." *In re Estate of McElveny*, 2017-NMSC-024, ¶ 22, 399 P.3d 919. The common-law duty is a "non-jurisdictional form of exhaustion," that is flexible, pragmatic, and "subject to several judge-made exceptions." *Id.* ¶ 23 (internal quotation marks and citation omitted). That said, when "a statute explicitly requires a party to exhaust particular remedies as a prerequisite to judicial review the statutorily mandated exhaustion requirements are jurisdictional. A court cannot excuse a petitioner from complying with an explicit and detailed statutory duty to exhaust administrative remedies." *Id.* (ellipsis, internal quotation marks, and citation omitted).

{16}    To determine if there is a jurisdictional statutory duty to exhaust administrative remedies, there must be "sweeping and direct statutory language indicating that there is no jurisdiction prior to exhaustion," and a "mere reference to the duty to exhaust administrative remedies" is not enough. *Id.* ¶ 24 (ellipses, internal

quotation marks, and citation omitted). *U.S. Xpress* offers one example of statutory language being enough to establish a jurisdictional statutory duty.

{17} In *U.S. Xpress*, this Court ruled that NMSA 1978, Section 7-1-22 (1995, amended 2015) of the Tax Administration Act is jurisdictional and requires exhaustion of administrative remedies. 2006-NMSC-017, ¶ 7. Section 7-1-22 (1995) provides that "[n]o court of this state has jurisdiction" over certain taxpayer proceedings "except as a consequence of [an] appeal" from a denied protest remedy "or except as a consequence of a" denied claim for a refund. The *U.S. Xpress* Court held that the broad language of Section 7-1-22 (1995) "plainly insists that no court will have jurisdiction except as a consequence of an administrative appeal or a claim for a refund." 2006-NMSC-017, ¶ 11. The Court then declined to apply the futility doctrine because futility of exhaustion would be an inappropriate "excuse for bypassing a clear statutory directive." *Id.* ¶ 12.

{18} On the other hand, in *In re McElveny*, this Court held that exhaustion of administrative remedies under the Uniform Unclaimed Property Act (UPA), NMSA 1978, §§ 7-8A-1 to -31 (1997, as amended through 2007), is "non-jurisdictional" and subject to judicial discretion and exceptions. 2017-NMSC-024, ¶¶ 1, 28. This is because there is "no direct and unequivocal statement in the UPA requiring exhaustion of administrative remedies," whereas there are numerous justifications

10

for imposing a common-law duty to exhaust. *Id.* ¶¶ 23-25. In deciding the question of exhaustion, the *McElveny* Court noted that if "the UPA contained an express and unequivocal exhaustion requirement, we would be required to remand this matter to the [d]epartment," but "because exhaustion is required in this case not for statutory, jurisdictional reasons but for prudential, non-jurisdictional reasons, we have discretion." *Id.* ¶ 28.

{19}     The language of Section 33-2-11(B) is much like that of the statute at issue in *U.S. Xpress*. *Compare* § 33-2-11(B) ("No court of this state shall acquire subject-matter jurisdiction . . . with regard to any cause of action . . . substantially related to the inmate's incarceration by the corrections department until the inmate exhausts the [NMCD's] internal grievance procedure."), *with* § 7-1-22 (1995) ("No court of this state has jurisdiction to entertain any proceeding by a taxpayer in which the taxpayer calls into question the taxpayer's liability for any tax . . . except as a consequence of the appeal by the taxpayer to the court of appeals from the action and order of the secretary . . . , or except as a consequence of a claim for refund."). In Section 33-2-11(B) the Legislature did not make a "mere reference" to a duty to exhaust but instead used "sweeping and direct statutory language indicating that there is no jurisdiction prior to exhaustion." *In re McElveny*, 2017-NMSC-024, ¶ 24 (ellipsis, internal quotation marks, and citation omitted). Because the Legislature

used sweeping and direct language indicating that no court "shall acquire subject-matter jurisdiction" until administrative remedies are exhausted, Section 33-2-11(B) is jurisdictional. But it is jurisdictional only as to statutorily created rights. *See AFSCME*, 2016-NMSC-017, ¶ 14.

{20} Plaintiffs sought a writ of habeas corpus and brought claims for injunctive and declaratory relief. Relief under the Declaratory Judgment Act is statutorily created. *See AFSCME*, 2016-NMSC-017, ¶ 14; *see also* NMSA 1978, § 44-6-2 (1975) (granting district courts the "power to declare rights, status and other legal relations whether or not further relief is or could be claimed"). Further, the Declaratory Judgment Act "does not enlarge the jurisdiction of the courts over subject matter and parties, but provides an alternative means of presenting controversies to courts having jurisdiction thereof." *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 13, 142 N.M. 786, 171 P.3d 300 (internal quotation marks and citation omitted). Because we conclude that Section 33-2-11(B)'s exhaustion requirement is jurisdictional, the district court was correct in dismissing Plaintiffs' Declaratory Judgment Act claims. The district court was also correct in concluding that the exhaustion requirement of Section 33-2-11(B) applies without exception. "A court cannot excuse a petitioner from complying with an explicit and detailed statutory duty to exhaust

administrative remedies." *In re McElveny*, 2017-NMSC-024, ¶ 23 (internal quotation marks and citation omitted).

{21} Nevertheless, writs of habeas corpus and injunctions are common-law claims falling under district courts' original jurisdiction.[3] *See* N.M. Const. art. VI, § 13. Under the principle of comity, when a court has original jurisdiction because there is a common-law or legal remedy "apart from or in addition to an administrative remedy," the court may "defer to the administrative agency where the interests of justice are best served by permitting the agency to resolve factual issues within its peculiar expertise." *McDowell v. Napolitano*, 1995-NMSC-029, ¶ 11, 119 N.M. 696, 895 P.2d 218. Additionally, certain judge-made exceptions to exhaustion—such as futility—may be applied. *See In re McElveny*, 2017-NMSC-024, ¶ 31; *U.S. Xpress*, 2006-NMSC-017, ¶ 12. We hold that district courts have authority to exercise their

---

[3]Plaintiffs do not contend that the claims for injunctive relief were improperly dismissed by the district court, but we note "that most any challenge to an administrative agency's decision may be articulated in terms of a request for injunctive relief. If one can circumvent administrative remedies simply by seeking the court's order enjoining the agency to reverse its decision, the exception will swallow the rule." *Gzaskow v. Pub. Emps. Ret. Bd.*, 2017-NMCA-064, ¶ 37 n.2, 403 P.3d 694. We also note that Section 33-2-11(A) grants NMCD with "the power and duty to examine and inquire into all matters connected with the government, discipline and police of the corrections facilities and the punishment and treatment of the prisoners." Thus, any injunctive relief pertaining to conditions of confinement should be dealt with at the administrative level, at least in the first instance, because NMCD has the power and the duty to address such matters. *See id.*

constitutional jurisdiction to issue writs of habeas corpus notwithstanding Section 33-2-11(B). *See* N.M. Const. art. VI, § 13; *see also* Max Minzner, *Habeas Corpus in New Mexico*, 46 N.M. L. Rev. 43, 54 n.56 (2016) (concluding that despite any limitation imposed by Rule 5-802(C) and Section 33-2-11(B), the Supreme Court retains "residual constitutional jurisdiction to issue writs of habeas corpus"). The Legislature has not circumscribed or restrained the writ of habeas corpus or district courts' habeas jurisdiction by enacting Section 33-2-11(B).

**C.	Named Plaintiffs Did Not Exhaust Administrative Remedies**

{22}	Although Section 33-2-11(B) is not jurisdictional as to Plaintiffs' habeas claims, Rule 5-802(C)(2) imposes an independent duty to exhaust administrative remedies for habeas claims challenging conditions of confinement. *See* Rule 5-802(C)(2) (tracking the language of Section 33-2-11(B) in allowing that an inmate may petition for a writ of habeas corpus challenging conditions of confinement "provided that no court of this state shall acquire subject-matter jurisdiction . . . with regard to any cause of action under state law that is substantially related to the inmate's incarceration by the NMCD until the inmate exhausts the NMCD's internal grievance procedure"). Outlining the procedure that must be followed to petition for a writ of habeas corpus is within the Supreme Court of New Mexico's vested inherent power to prescribe rules and regulate pleadings, practice, and procedure in

all courts of this state. *See* N.M. Const. art. III, § 1; N.M. Const. art. VI, § 3; *Martinez v. Chavez*, 2008-NMSC-021, ¶ 13, 144 N.M. 1, 183 P.3d 145. And although there is a substantive right to habeas corpus, N.M. Const. art. II, § 7, "restrictions on the time and place of exercising this right are procedural and within the Supreme Court's rule making power." *State v. Garcia*, 1984-NMCA-009, ¶ 11, 101 N.M. 232, 680 P.2d 613; *Ammerman v. Hubbard Broad., Inc.*, 1976-NMSC-031, ¶ 10, 89 N.M. 307, 551 P.2d 1354; *cf. Olguin v. State*, 1977-NMSC-034, ¶ 2, 90 N.M. 303, 563 P.2d 97 ("The right of appeal is provided for in the Constitution while the means for exercising that right are properly controlled by rules of procedure."). Thus, Named Plaintiffs must still show that they have exhausted administrative remedies for their habeas claims, but because of this Court's and district courts' original jurisdiction, N.M. Const. art. VI, §§ 3, 13, exceptions to exhaustion may be considered.

{23} "Th[e] exhaustion requirement is designed to ensure that habeas petitioners have tried to resolve their challenges to their conditions of confinement through the internal corrections procedure." *Minzner*, *supra* 54. Standard justifications for exhaustion support such a requirement for habeas claims. By requiring exhaustion for habeas claims related to conditions of confinement, NMCD is put on notice of any complaints and provided with an opportunity to remedy the situation. *See Resolution Tr. Corp. v. Binford*, 1992-NMSC-068, ¶ 18, 114 N.M. 560, 844 P.2d

810 ("[O]ne of the main purposes of requiring exhaustion of administrative remedies is to prevent the government from being surprised by claims it has not had time to consider administratively." (internal quotation marks and citation omitted)); *see also Cummings v. State*, 2007-NMSC-048, ¶ 26, 142 N.M. 656, 168 P.3d 1080 ("Requiring a prisoner to exhaust internal grievance procedures ensures that [NMCD] has been given a full opportunity to undertake such an inquiry."). Furthermore, exhaustion may help prevent unnecessary habeas claims in district court and ensure that the court will have the most complete record possible when such claims make their way to the district court. *See McGee v. United States*, 402 U.S. 479, 489-90 (1971) (explaining that exhaustion allows for a full opportunity to make a factual record and allows the agency to apply its expertise). But how do inmates, as a class, exhaust administrative remedies for Rule 5-802(C)(2) purposes?

{24} On this point, Plaintiffs argue that they put forth facts in support of their position that exhaustion would be futile and that the district court erred by dismissing the amended complaint when there was a disputed question of fact. Plaintiffs contend that they "referred to the existence of evidence that [c]lass [m]embers had filed grievances, including grievances under the emergency grievance procedure, seeking to remedy the government's constitutional violations in the midst of the COVID-19 pandemic, but had received no determination or remedy." Implicitly,

therefore, Plaintiffs' position is that to establish that administrative remedies have been exhausted, or that exhaustion would be futile, it is enough to allege that unnamed class members have attempted to exhaust administrative remedies and have received no response.

{25} Defendants argue that the holding from *U.S. Xpress* requires each class member to individually exhaust administrative remedies before seeking judicial review. In *U.S. Xpress*, this Court declined to adopt the doctrine of "vicarious or virtual exhaustion" for the Tax Administration Act. 2006-NMSC-017, ¶ 1. The *U.S. Xpress* Court held that vicarious exhaustion did not apply because the Tax Administration Act "provid[ed] the exclusive remedies for tax refunds and require[ed] the taxpayer to individually seek the refund." *Id.* Additionally, this Court rejected the application of the futility exception, holding that it has no force "in the face of the clear legislative command" to exhaust. *Id.* ¶ 12. Defendants argue that the same should be true here because of the language used in Section 33-2-11(B).

{26} We conclude both positions are impractical. Plaintiffs' view of vicarious exhaustion is far too broad. We cannot say that the entire inmate population of New Mexico may be considered to have exhausted administrative remedies simply because some unnamed class member/inmate tried to file a grievance. Similarly, we cannot say that the nearly 6,000 inmates must each individually show they have

17

exhausted administrative remedies. Such a requirement for all class members could unduly burden the prison's complaint system and delay resolution of grievances. *Woodford v. Ngo*, 548 U.S. 81, 94 (2006) (explaining that exhaustion "was intended to 'reduce the quantity and improve the quality of prisoner suits'" (citation omitted)). Thus, a balance must be struck, a balance that provides NMCD with an opportunity to expeditiously address the merits of a claim while avoiding an undue burden on the internal grievance process.

{27} We conclude that the exhaustion requirement for habeas claims is satisfied as to an entire plaintiff class when one or more *named* class members have exhausted administrative remedies for each claim raised by the class. Defendants' argument that *U.S. Xpress* requires each class member to individually exhaust administrative remedies is unpersuasive for three reasons.

{28} First, as reflected above, *U.S. Xpress* concerned a statutorily created remedy, not a common-law or legal remedy apart from or in addition to the administrative remedy applied. 2006-NMSC-017, ¶ 8 (providing that the Tax Administration Act offers two exclusive remedies, a protest remedy and a refund remedy).

{29} Second, in determining that the doctrine of vicarious exhaustion did not apply, the *U.S. Xpress* Court not only looked to the specific language of the Tax Administration Act, but it also concluded that because the exhaustion requirement

was jurisdictional and class actions are procedural, "the class action procedural rule does not effect any change on the subject matter jurisdiction limitations imposed by the Legislature." *Id.* ¶¶ 9, 13. Here, the same reasoning does not apply because Section 33-2-11(B) exhaustion cannot be jurisdictional as to the habeas claims.

{30}     Finally, there are factual differences between *U.S. Xpress* and this case. This case involves the health and well-being of individuals, not tax refunds. Moreover, in cases like this one, the composition of the class is subject to constant change beyond the class members' control. *See Jones v. Berge*, 172 F. Supp. 2d 1128, 1131 (W.D. Wis. 2001) (discussing class actions that challenge conditions of confinement and concluding that "the transfer of just one additional inmate to the institution intermittently would prevent a class action suit from ever being filed").

{31}     Because Named Plaintiffs challenge their conditions of confinement rather than the fact or length of their confinement, looking to class actions under the Prison Litigation Reform Act (PLRA) is instructive. *See Preiser v. Rodriguez*, 411 U.S. 475, 476, 499-500 (1973) (holding that a 42 U.S.C. Section 1983 civil rights action "is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody"); *see also* PLRA, 42 U.S.C. § 1997e(a) (2013) ("No action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Additionally, PLRA class actions are particularly relevant because Section 33-2-11(C) specifically mentions that when an inmate sues under 42 U.S.C. Section 1983, exhaustion of the administrative remedies is not required unless the remedies substantially comply with the minimum standards of the PLRA. *See* § 33-2-11(C).

{32}    Circuit courts across the country have held that the PLRA's exhaustion requirement is satisfied through "'vicarious exhaustion'" when one or more *named* class members have exhausted administrative remedies for each claim raised by the class. *See Chandler v. Crosby*, 379 F.3d 1278, 1287-88 (11th Cir. 2004) (concluding that the named class member satisfied the PLRA's exhaustion requirement "as to the entire plaintiff class"); *see also Gates v.* Cook, 376 F.3d 323, 330 (5th Cir. 2004) (determining that one named class member's exhaustion was "enough to satisfy the requirement for the class"); *Jackson v. District of Columbia*, 254 F.3d 262, 269-70 (D.C. Cir. 2001) (analyzing whether any of the named plaintiffs exhausted administrative remedies).

{33}    Although the Tenth Circuit has not expressly adopted the vicarious exhaustion rule for the PLRA, it has expressed approval of the rule. *See McGoldrick v. Werholtz*, 185 F. Appx. 741, 743-44 (10th Cir. 2006) ("Although we agree with plaintiffs that

the vicarious exhaustion rule might save their claims if the district court had certified a class of prisoners . . . , the district court did not certify a class here."). And federal district courts in New Mexico and Colorado have applied the vicarious exhaustion rule to the PLRA. *See* Memorandum Op. and Ord. Denying Cnty. Defs. Motion for Partial Summary Judgment at 8, *Armendariz v. Santa Fe Cnty. Bd. of Comm'rs*, 1:17-cv-00339-WJ-LF (D.N.M. Feb. 20, 2019) (concluding that application of the rule was "legally supportable as well as feasible"); *see also Decoteau v. Raemisch*, 304 F.R.D. 683, 687-88 (D. Colo. 2014) (approving of vicarious exhaustion under the PLRA when "the named [p]laintiffs have exhausted their administrative remedies").

{34}    We conclude that requiring one or more named plaintiffs to exhaust administrative remedies strikes the balance needed to carry out the purposes of exhaustion while also ensuring that inmate complaints are addressed. We note that this is a threshold requirement for determining whether Rule 5-802(C)'s exhaustion requirement has been met. The plaintiff class would still need to be certified under Rule 1-023. *See Crosby*, 379 F.3d at 1287 (holding that plaintiffs must still be certified under the federal equivalent of Rule 1-023 when applying vicarious exhaustion for the PLRA). Vicarious exhaustion would then apply to all plaintiffs if the class is certified, but it would not apply to nonexhausted plaintiffs if class certification is denied. We recognize that habeas corpus actions are not governed by

21

our Rules of Civil Procedure, *see Allen v. LeMaster*, 2012-NMSC-001, ¶¶ 13-17, but "in these circumstances, the habeas corpus jurisdiction and the duty to exercise it being present, the courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage," *Harris v. Nelson*, 394 U.S. 286, 299 (1969). Thus, we hold that Rule 1-023 class action procedures are appropriate for a class of inmate plaintiffs challenging conditions of confinement under Rule 5-802(C) governing habeas corpus procedures. Additionally, we request recommendations from the Rules of Criminal Procedure for the State Courts Committee for procedures analogous to Rule 1-023 for a class of inmate plaintiffs challenging conditions of confinement under Rule 5-802(C).

{35} Plaintiffs' amended complaint lists eight Named Plaintiffs to serve as representatives under Rule 1-023(A) for "all current and future persons held in any New Mexico prison facility during the course of the COVID-19 pandemic." The amended complaint does not allege that any of the Named Plaintiffs exhausted administrative remedies. In fact, during oral argument, Plaintiffs' attorney acknowledged that the amended complaint "was confined to the Named Plaintiffs" and that none of them filed a grievance. Nevertheless we conclude that simply alleging that unnamed class members have exhausted administrative remedies is not

enough to satisfy the exhaustion requirement under Rule 5-802(C), even when applying vicarious exhaustion.

{36} Next, Plaintiffs argue that exhaustion is futile because NMCD cannot grant the relief requested.

**D. Plaintiffs Do Not Allege Facts Sufficient to Show Exhaustion Would Be Futile**

{37} Plaintiffs contend that exhaustion of administrative remedies would be futile because their claims relate to Named Plaintiffs' release and NMCD lacks any authority to grant release. Plaintiffs argue that *Cummings*, 2007-NMSC-048, ¶¶ 25-26, supports the proposition that if the relief requested cannot be granted by the administrative agency, exhaustion is futile.

{38} In *Cummings*, this Court held that a writ of habeas corpus "is not a one-stop shop for a prisoner's grievances" and that the petitioner's writ for habeas corpus, arguing that he was wrongly denied the right to vote, was correctly denied by the district court. *Id.* ¶ 25. The petitioner in *Cummings* sought a writ of habeas corpus, arguing that the district court made a clerical error wrongly denying him the right to vote. *Id.* ¶¶ 3, 25. The *Cummings* Court denied the writ because the right to vote is not part of a defendant's felony conviction and sentence but simply a collateral consequence of that conviction. *Id.* ¶ 25. The Court, in dicta, noted that it

"question[ed] the district court's conclusion that [the petitioner] is first required to exhaust his administrative remedies . . . before requesting relief in district court" because the petitioner's "allegation has nothing to do with the correctional facilities where he is housed, nor does it have anything to do with his punishment and treatment." *Id.* ¶ 26. The Court reasoned that to force the petitioner "to pursue an administrative remedy would be futile simply because there is no administrative remedy for what he seeks." *Id.*

{39}    Plaintiffs' argument that *Cummings* supports the proposition that exhaustion would be futile here fails for two reasons.

{40}    First, *Cummings* stands for the proposition that if there is no administrative remedy to address the underlying issue necessitating the request for habeas relief, then exhaustion is futile. *Id.* In *Cummings*, the petitioner was requesting habeas relief because he was being denied the right to vote, a complaint NMCD has no power to remedy. *Id.* In such a scenario, exhaustion is futile not only because NMCD cannot remedy the situation, but also because Rule 5-802(C) would not apply where the cause of action is not "substantially related to the inmate's incarceration by the NMCD." Rule 5-802(C); *see Cummings*, 2007-NMSC-048, ¶ 26 (concluding that the right to vote "has nothing to do with the correctional facilities where [the

24

petitioner] is housed, nor does it have anything to do with his punishment and treatment").

{41} Unlike the underlying issue necessitating the request for habeas relief in *Cummings*, Plaintiffs here are requesting habeas relief for something NMCD has not only the power but the *duty* to address. *See* § 33-2-11(A) (providing that NMCD has "the power and the duty to examine and inquire into all matters connected with . . . the punishment and treatment of the prisoners"). Further, Plaintiffs' claims are directly related to Named Plaintiffs' confinement and treatment by NMCD, thus falling squarely under Rule 5-802(C). Plaintiffs sought a writ of habeas corpus alleging that Defendants refused to enforce their own mandates for social distancing, mask-wearing, heightened hygiene practices, and safe quarantine and treatment. As the district court correctly points out, NMCD has the authority to address these issues pertaining to conditions of confinement, and it "has procedures in place, including emergency procedures, to remedy conditions that pose a risk of harm to inmates." If Named Plaintiffs had utilized the NMCD internal grievance procedure, perhaps their complaints over conditions of confinement would have been remedied.

{42} Second, Plaintiffs' reading of *Cummings* would render Rule 5-802(C) a nullity. Plaintiffs' argument—that because the requested relief (release) cannot be granted by NMCD, exhaustion is futile—can be applied to every case requesting

25

habeas relief based on conditions of confinement. Any inmate could bypass the exhaustion requirement of Rule 5-802(C) simply by requesting to be released. This is not futility.

{43} We have held that "[f]utility, as an exception to exhaustion requirements, applies where the agency has *deliberately placed an impediment in the path of a party*, making an attempt at exhaustion a useless endeavor." *In re McElveny*, 2017-NMSC-024, ¶ 31 (emphasis added) (internal quotation marks and citation omitted). This definition of futility is embodied in the PLRA's futility rule as well: "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).

{44} When looking to the facts alleged in the amended complaint and accepting the allegations therein as true, Plaintiffs do not state any facts to show that exhaustion of available NMCD remedies would be futile. *See Gzaskow*, 2017-NMCA-064, ¶ 23; *see also* Rule 5-802(H)(2)(b) (providing that the court shall order a summary dismissal of a petition for a writ of habeas corpus if it plainly appears from the record that "the petitioner is not entitled to relief as a matter of law"). Plaintiffs never allege that NMCD "deliberately placed an impediment in the path of [Named Plaintiffs],

26

making an attempt at exhaustion a useless endeavor." *In re McElveny*, 2017-NMSC-024, ¶ 31 (internal quotation marks and citation omitted). Plaintiffs merely allege that "NMCD cannot grant release, the relief requested, on its own." We acknowledge that our standard of notice pleading allows a plaintiff to state only general allegations of conduct in a complaint, *see Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 9, 109 N.M. 386, 785 P.2d 726, but we will not read into a complaint matters which it does not contain, *see Wells v. Arch Hurley Conservancy Dist.*, 1976-NMCA-082, ¶ 35, 89 N.M. 516, 554 P.2d 678 (Hernandez, J., specially concurring) ("[A] court under the guise of liberal construction of a pleading cannot supply matters which it does not contain.").

{45}  Even allowing for a liberal construction of the amended complaint, Plaintiffs do not allege facts showing administrative remedies were made unavailable or futile. Take for example Plaintiffs' facts for their claim that Defendants' treatment of inmates amounts to cruel and unusual punishment in violation of Article II, Section 13 of the New Mexico Constitution. Plaintiffs allege that Defendants "have acted with deliberate indifference to the substantial risk [Named] Plaintiffs face of infection with COVID-19 due to the conditions of their confinement." More specifically, Plaintiffs allege that Defendants "know or should know that the conditions of [Named] Plaintiffs' confinement expose them to a substantial risk of

infection with COVID-19." Absent from these allegations is anything about Defendants preventing, thwarting, or hindering Named Plaintiffs' efforts to avail themselves of an administrative remedy.

{46} Nor are we persuaded by Plaintiffs' argument that the district court should have held an evidentiary hearing to determine whether exhaustion was in fact futile. Plaintiffs argue that they provided facts to the district court in briefing and at argument to support their position that exhaustion was futile; however, the facts are all premised on the idea that exhaustion is futile when NMCD cannot grant release or because unnamed class members have tried to exhaust and received no response. As stated above, neither the inability to grant release nor the filing of a grievance by an unnamed class member demonstrates futility.

{47} Although our reasoning rests on the exhaustion requirement of Rule 5-802(C) rather than Section 33-2-11(B), we conclude that the district court was correct in holding that "Plaintiffs do not allege that the [Named] Plaintiffs exhausted or attempted to exhaust the NMCD's internal grievance procedures" and that "[e]xhaustion would not be futile in this case because the NMCD has the authority to address the conditions in New Mexico's correctional facilities." This fact of NMCD's authority coupled with the Named Plaintiffs' failure to exhaust NMCD's emergency grievance procedures, with no factual allegation to support a finding that

an attempt to exhaust those procedures would be futile, forecloses the Named Plaintiffs' right to judicial relief before exhaustion. Thus, we affirm the district court's dismissal of the amended complaint. *See State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the right for any reason doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)).

**E.     The District Court Properly Dismissed the Entire Action Despite the Presence of the Nonprofit Organizations**

{48}     The district court's order dismissing the amended complaint did not make any ruling as to standing. The district court held that to allow the nonprofit organizations "to pursue the claims in the [a]mended [c]omplaint when the [Named] Plaintiffs have not exhausted their administrative remedies would frustrate the legislative purpose of Section 33-2-11(B) and would lead to an absurd result." The district court determined that because the Named Plaintiffs had not exhausted administrative remedies, the court lacked "subject matter jurisdiction over the claims raised in the [a]mended [c]omplaint with respect to all Plaintiffs." As such, the district court concluded that the Governor's motion to dismiss the nonprofit organizations for lack of standing was rendered moot.

{49} Plaintiffs argue that the district court erred in dismissing the nonprofit organizations by conflating exhaustion and standing. Plaintiffs contend that because the exhaustion requirement only applies to inmates, it cannot apply to the nonprofit organizations, and a separate substantive analysis of their standing is necessary. We disagree.

{50} We conclude that the district court correctly dismissed the amended complaint with respect to all Plaintiffs. We also conclude that the district court's reasoning— to allow the nonprofit organizations to pursue the claims in the amended complaint when none of the Named Plaintiffs have exhausted their administrative remedies would frustrate the purpose of Section 33-2-11(B)—equally applies to Rule 5-802(C). To allow the nonprofit organizations to pursue the claims in the amended complaint when none of the Named Plaintiffs have exhausted their administrative remedies would render meaningless the requirements for exhaustion in Section 33-2-11(B) and Rule 5-802(C). *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 36, 309 P.3d 1047 ("We will not construe a statute to defeat the intended purpose or achieve an absurd result." (internal quotation marks and citation omitted)).

{51} Plaintiffs argue that the district court's conclusion forces the nonprofit organizations "to exhaust remedies that they have no avenue to pursue." This argument misses the point. The nonprofit organizations "are nonprofit public

30

advocacy organizations seeking to assert rights on behalf of their constituents." As such, their claims are brought purely in a representative capacity and depend here on the viability of the Named Plaintiffs' claims. It makes no sense to allow the nonprofit organizations to pursue claims on behalf of the Named Plaintiffs they represent who have not met their jurisdictional exhaustion prerequisites. *Cf. Parent/Pro. Advocacy League v. City of Springfield, Mass.*, 934 F.3d 13, 34 (1st Cir. 2019) (concluding that it would be illogical to allow the organizations to avoid the exhaustion requirement prerequisite to standing for the students they represent).

{52} We conclude that the district court properly dismissed the amended complaint as to all Plaintiffs. The exhaustion requirements of Section 33-2-11(B) and Rule 5-802(C) cannot be circumvented by bringing claims through a representative entity.

## III. CONCLUSION

{53} We conclude that Section 33-2-11(B)'s exhaustion requirement is jurisdictional as to statutorily created rights. We also conclude that Rule 5-802(C) imposes an independent duty to exhaust administrative remedies for habeas claims. We hold that to satisfy the habeas corpus exhaustion requirement under Rule 5-802(C) for an entire plaintiff class, one or more named class members must exhaust administrative remedies for each claim. Because Plaintiffs do not allege that the Named Plaintiffs exhausted or sought to exhaust NMCD's internal grievance

31

procedures, nor do they allege facts sufficient to show exhaustion would be futile, the district court correctly dismissed the amended complaint. We affirm.

{54}    **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**JULIE J. VARGAS, Justice**